UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAN M. C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-487 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Jan C., on December 23, 2020. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Jan C., filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging a disability onset date of November 15, 2018. (Tr. 15). The Disability Determination Bureau denied Jan C.'s applications initially on March 14, 2019, and again upon reconsideration on May 22, 2019. (Tr. 174-75, 206-07). Jan C. subsequently filed a timely request for a hearing on May 31, 2019. (Tr. 234-35). A hearing was held on April 17, 2020, via telephone, before Administrative Law Judge (ALJ) Kathleen Winters. (Tr. 32). Vocational Expert (VE) Marie Barhydt also appeared at the hearing. (Tr. 32). The ALJ issued an unfavorable decision on June 5, 2020. (Tr. 15-26). The Appeals Council denied review,

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

First, the ALJ found that Jan C. met the insured status requirements of the Security Act through March 31, 2024. (Tr. 17). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Jan C. had not engaged in substantial activity since November 15, 2018, the alleged onset date. (Tr. 17).

At step two, the ALJ determined that Jan C. had severe impairments of obesity and generalized anxiety disorder. (Tr. 18). The ALJ found that the above medically determinable impairments significantly limited Jan C.'s ability to perform basic work activities. (Tr. 18). Jan C. also alleged disability due to diabetes mellitus with neuropathy. (Tr. 18). However, the ALJ indicated that the impairment caused no more than minimal limitations on her ability to engage in basic work activities, and therefore considered it non-severe. (Tr. 18-19). The ALJ also found that Jan C.'s alleged locking in her fingers and her back pain were nonmedically determinable impairments. (Tr. 19).

At step three, the ALJ concluded that Jan C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 1). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 19-21).

After consideration of the entire record, the ALJ then assessed Jan C.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can frequently climb stairs or ramps, balance, kneel, crawl, stoop, or crouch; can never climb ladders, ropes, or scaffolds. Must avoid concentrated exposure to extreme cold, extreme heat, vibration, moving machinery, and unprotected heights. With work that can be learned in 30 days, or less, with simple routine tasks; simple work related decisions, routine work place changes, and is able to remain

>on task in two-hour increments. Work with an option to sit or stand, changing positions no more frequent than every 30 minutes, while remaining on task.

(Tr. 21). The ALJ explained that in considering Jan C.'s symptoms, she followed a two-step process. (Tr. 21). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could have been expected to produce Jan C.'s pain or other symptoms. (Tr. 21). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Jan C.'s functioning. (Tr. 21-22).

After considering the evidence, the ALJ found that Jan C.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 22). However, she found that the medical record did not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations that Jan C. alleged. (Tr. 22).

At step four, the ALJ found that Jan C. was unable to perform any past relevant work. (Tr. 24). However, the ALJ found jobs that existed in significant numbers in the national economy that Jan C. could perform. (Tr. 24-26). Therefore, the ALJ found that Jan C. had not been under a disability, as defined in the Social Security Act, from November 15, 2018, through the date of the ALJ's decision. (Tr. 26).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive.");

*Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§**

**404.1520(c), 416.920(c)**; *see* **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled.  **20 C.F.R. §§ 404.1520(e), 416.920(e)**.  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

  Jan C. has requested that the court remand this matter for additional proceedings.  In her appeal, Jan C. has offered only one argument in favor of remand. Jan C. alleges that the ALJ's findings at step 5 were not supported by substantial evidence, as the VE's testimony regarding national job numbers did not rise to the level of significance required by the regulations.

  At step five, the burden shifts from the claimant to the Commissioner.  **Briscoe ex rel. Taylor v. Barnhart**, 425 F.3d 345, 352 (7th Cir. 2005).  At step five, it is the Commissioner's

burden to establish that a claimant's RFC allows her to engage in work found in "significant numbers" in the national economy.  *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009); *see* **20 C.F.R. §§ 404.1566, 416.966**.  Relying on the VE's testimony, the ALJ found that Jan C. was capable of performing the following jobs: router (with 50,000 jobs nationally), conveyor line baker worker (with 12,500 jobs nationally), and general office helper (with 38,000 jobs nationally).  (Tr. 25).  This amounts to 105,000 jobs in the national economy that the ALJ found that Jan C. could perform with her RFC.  Jan C. relies on *Sally S. v. Barryhill*, No. 2:18cv460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019) in arguing that 105,000 jobs do not amount to "significant numbers," therefore, she asserts that the ALJ failed to meet the Commissioner's burden.

  The Seventh Circuit has not established a threshold for what constitutes "significant numbers" to satisfy the step five requirement.  *See Weatherbee v. Astrue*, 549 F.3d 565, 572 (7th Cir. 2011) (finding that 140,000 positions available nationally to be "well above the threshold for significance," but declining to identify the threshold).  The Seventh Circuit has held in two unpublished opinions that as few as 30,000 jobs nationally are significant, but both cases, along with *Weatherbee*, rely on *Liskowitz*, which focused on regional numbers rather than national numbers.  *Liskowitz*, 559 F.3d at 743; *Primm v. Saul*, 789 Fed. Appx 539, 546 (7th Cir. 2019); *Mitchell v. Kijakazi*, 2021 WL 3086194, at *3 (7th Cir. 2021).

  District judges in this circuit do not agree as to whether it is proper to rely on *Liskowitz* in discussing what constitutes "significant numbers" nationally, and some have "accused the Seventh Circuit of misapplying *Liskowitz* in cases (like *Mitchell, Weatherbee, and Primm*) involving national numbers."  *Engel v. Kijakazi,* 2021 WL 4843871, at *11 (E.D. Wis. Oct. 18, 2021) (collecting cases).  Others, like *Engel*, assert that it is possible that the Seventh Circuit is

indicating that reliance on *Liskowitz* is proper. *Engel,* 2021 WL 4843871, at *11.  "More likely, though, it appears from the Seventh Circuit's interpretation of its own prior holding in *Liskowitz* that 1,000 jobs nationally can be a significant number of jobs." *Engel,* 2021 WL 4843871, at *11.

Regardless of whether *Liskowitz* may be considered precedential for national job numbers, many courts have found that numbers as low as 6,000 national jobs is significant enough to meet the requirement.  *Engel*, at *11 (collecting cases).  However, Jan C. relies on a single district court case which found that 120,350 jobs nationally is not a significant number.  *Sally S.,* 2019 WL 3335033, at *11.  That case, however, appears to be an outlier, even among the same district judge's rulings.  The same judge in *Sally S.* has held that as few as 50,566 jobs is a significant number of jobs nationally.  *See Rhonda F. v. Kijakazi*, 2022 WL 292738, at *7 (N. D. Ind. Feb. 1, 2022); *see also John B. v. Kilolo Kijakazi*, 2022 WL 669900, at *6 (N.D. Ind. Mar. 7, 2022) (finding that 59,000 jobs nationally is a significant number).   The judge relied on other recent cases in the Northern District of Indiana, which held that as few as 41,000 jobs nationally to be a significant number.  *See Zych v. Kijakazi*, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 16, 2021) ("Given the foregoing persuasive authority, and the lack of clarity in this circuit as to what constitutes a significant number of jobs, I conclude that 41,000 jobs in the national economy is a 'significant number' of jobs for the purposes of the ALJ's step-five determination in this case."); *Dugan v. Kijakazi*, 2021 WL 5231731, at *4 (N.D. Ind. Nov. 9, 2021) ("Therefore … I conclude that 99,000 jobs is a 'significant number' of jobs for purposes of the ALJ's step-five determination in this case.").  Considering the foregoing cases, it is clear that 105,000 jobs in the national economy is a "significant number" for the purposes of the step five determination.

7

Jan C. further argues that *Sally S.* requires looking at job numbers as a percentage of total jobs in the economy, which would find that Jan C. was capable of performing only .066% of total jobs in the national economy. [ECF 24 at 11]. Jan C. argues that under *Sally S.*, the ability to perform .080% of total jobs in the national economy did not amount to a "significant number" of jobs. *Sally S.*, 2019 WL 3335033, at *11. However, there is no evidence that this percentage application is the proper way to determine whether job numbers are considered "significant." No case has held that this is the only way, or even the best way, to determine whether job numbers constitute a "significant number." Therefore, the court finds this argument unpersuasive.

Assuming arguendo that this percentage calculation under *Sally S.* is valid, Jan C. still fails to argue persuasively that these numbers are not a "significant number" for the purposes of step five. Using the methods proffered by Jan C., the court can attempt to convert the national numbers to regional numbers. The information for total number of full time jobs in Indiana is unavailable for November 2018 (the month used by Jan C. when looking to the total number of jobs in the national economy), but reports from September 2018 show that Indiana's total employment was 3,279,550.[3] Using the percentages provided by Jan C., the jobs the ALJ found she could perform would exist in the following numbers in Indiana: 1,016 (router), 227 (conveyor line baker worker), and 787 (general office helper). The total number of the three occupations would be either 2,164 jobs (using Jan C.'s percentage calculation[4]), or 2,030 (adding the three job numbers together). Either way, these reduced figures remain "significant" for the purposes of step five under *Liskowitz*. *See Liskowitz*, 559 F.3d at 743 ("As few as 174 jobs have been held to be significant, … and it appears to be well-established that 1,000 jobs is a

---

[3] www.hoosierdata.in.gov/MonthlyBriefing/LMI-Sep2018.pdf , page 4 (last accessed April 14, 2022).
[4] Jan C. states that she could only perform .00066% of jobs in the national economy. .066% of 3,279,550 is 2,164 jobs.

significant number") (collecting cases).

Given the lack of definitive guidance from the Seventh Circuit as to what constitutes a significant number of jobs, combined with the persuasive authority regarding significant numbers, the court finds that 105,000 jobs in the national economy is a "significant number" of jobs for the purposes of the ALJ's step five determination in this case.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 25th day of April, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge